**PAYNE et al. v. CITY OF PERRYTON et al.**

No. 3796.

Court of Civil Appeals of Texas. Amarillo.

Feb. 10, 1932.

Rehearing Denied April 13, 1932.

498

J. M. Bull and J. W. Payne, both of Perryton, and Hoover, Hoover & Cussen, of Canadian, for appellants.

R. T. Correll, of Perryton, Goggans & Ritchie, of Dallas, Elcock & Martin, of Wichita, Kan., and Underwood & Strickland and Madden, Adkins, Pipkin & Keffer, all of Amarillo, for appellees.

JACKSON, J.

On June 15, 1931, plaintiffs, J. W. Payne, J. M. Bull, J. M. Grigsby, J. C. May, F. Dodson, Sr., C. C. Rifenberg, Calvin Flowers, K. K. Thomas, and J. L. Donley, presented to the Honorable E. J. Pickens, district judge of Ochiltree county, Tex., in chambers, their petition seeking a temporary injunction restraining the city of Perryton, its mayor and aldermen, from reassessing against the plaintiffs and their property two-thirds of the cost of paving certain streets in the corporate limits of the city, fronting the respective properties of the plaintiffs, and from issuing paving certificates for such reassessments and restraining them from levying and collecting taxes on the property in the city for the purpose of paying any part of the consideration for said paving.

The plaintiffs alleged that, in the spring of 1930, the city entered into negotiations with the Lacey Paving Company for paving certain streets, and that on May 27, 1930, the city council passed certain ordinances, assessing two-thirds of the cost against the owners whose property fronted on the streets to be improved, providing for the levy and collection of taxes with which the city would pay its one-third of such cost, and fixing the time and place for hearing the contests of property owners, directing the city secretary to give notice of such hearing, and that the city entered into a contract with the Lacey Paving Company for the construction of such paving.

That in compliance with the ordinances, resolutions and contract, the Lacey Paving Company paved the streets designated, and the city issued its negotiable certificates against the owners and their respective properties abutting on said streets, for two-thirds of the cost of the paving, and delivered them to said paving company. That thereafter certain owners filed separate suits against the Lacey Paving Company and the North Texas Trust Company, assailing as invalid and void the ordinances, resolutions, contract, and certificates.

The plaintiffs pleaded that, in order to procure the passage of the ordinances and resolutions and to secure the contract with the city, the agent of said paving company represented that no paving would be done in front of any property unless the owner thereof desired such paving. That notice to the owners was given only by publication in the Ochiltree Herald, and prior to the date set for such hearing, and before such hearing was had, the agent of said paving company and some of the members of the city council informed the plaintiffs and various other property owners that it was unnecessary to appear at the hearing and contest the assessments, as the said paving company did not intend to pave in front of any property unless the owners wanted the paving and signed a contract therefor. That at the meeting of the city council to hear contests, the owners who appeared were advised by members of the council that the proceedings would not affect any owner who did not agree to pave, and that, but for the representations made to the city by the agent of the paving company, as plaintiffs are informed, the ordinances and resolutions would not have been passed or the contract executed for the paving. That but for said representations made by the agent of the paving company and the members of the council, which the plaintiffs believed and upon which they relied, they would have contested the assessments which affected them and their property, because the paving would not enhance the value of their said property, but was a detriment thereto. That the said paving company, before it constructed the paving, was notified that it was doing the work at its own risk and expense, as plaintiffs were not liable and would not pay therefor.

That such representations of the paving company and the city council were false and fraudulently made, and the plaintiffs were induced thereby to refrain from contesting such proceedings until the time had elapsed therefor. That but for such representations the plaintiffs would have contested the proceedings and the issuance of paving certificates affecting their property, and because of such fraud such certificates are void and unenforceable.

That the ordinances, resolutions, and contract were void because the city council is composed of five aldermen, only three of whom voted in favor of such proceedings and

contract, which was not a two-thirds vote of the city council, which the law requires.

That, as a continuation of the fraud alleged, the Lacey Paving Company represented to the city that, unless it reassessed the property owners and their abutting property, the city would be liable to the holders of the assessment certificates and thereby coerced the city council to call a meeting to be held on June 16, 1931, for the purpose of reassessing the cost of the paving and issuing new negotiable certificates therefor. That the city council would meet on said date and issue said new assessment certificates, which new assessment certificates would be invalid and void. That such action would be contrary to article 3, § 53, of the Constitution of the state, and article 11, § 5, of said Constitution. That the statutes providing for the assessment of the cost and the reassessment thereof against the property owners were in violation of the Constitution, and that the city, unless restrained, would attempt to correct the ordinances and resolutions theretofore passed, reassess plaintiffs' property, and issue reassessment certificates against the plaintiffs and their property and issue new warrants for the city's part of the paving, all of which would jeopardize the rights of plaintiffs and cloud the titles to their properties, and to prevent which plaintiffs have no adequate remedy at law.

The court, after hearing this application in chambers, directed the clerk, on sufficient bond, to issue a temporary restraining order as prayed for.

The city and its officers, on July 16, 1931, filed a plea in abatement and a motion to dissolve the temporary injunction theretofore granted, which, in substance, contained the same allegations set out in their second amended original answer filed on September 8, 1931, in which, after a general demurrer, numerous special exceptions, and general denial, they specially denied the equities in plaintiffs' petition, pleaded that the ordinances, resolutions, and contract were passed and approved on May 27, 1930, by unanimous vote of the city council, set up in detail such ordinances, resolutions, and contract, the regularity and validity thereof; that the contract contained a provision requiring that, if there were any errors or irregularities in the proceedings or in the assessments, the city would, as allowed by law, correct such errors. That thereafter the city determined that, inasmuch as the assessment ordinance passed on July 16, 1930, was enacted by less than a two-thirds vote of the aldermen, such assessment ordinance was irregular and invalid and in compliance with the contract and the statutes, set June 16, 1931, to correct such ordinance, hear contests of owners of abutting property, and gave notice of the time, place, and purpose of such meeting and hearing, but before such

hearing was had their proceedings were restrained by order of the court. That the city was performing its duty in good faith and acting under the advice of its attorneys. That it having given plaintiffs notice to appear before the council and make such contest as they desired before any reassessment was to be made or any reassessment certificates would be issued, if the plaintiffs were dissatisfied with the action of the council, they had the right to appeal therefrom to any court of competent jurisdiction and have their rights adjudicated; hence, they had a complete and adequate remedy at law. That no assessment certificates, if reassessments were levied, would be issued until such hearing was completed and until all outstanding certificates involved herein were returned to the city and canceled. That it was not the intention or purpose of the city to issue any further warrants in payment of its part of the paving. That neither the paving certificates nor the warrants theretofore issued were owned by the city or its officers, but such certificates and warrants had been issued and delivered. That a part thereof, according to the information of the city, were owned by the Lacey Paving Company, a part by the North Texas Trust Company, and a part by the Brown Crummer Investment Company, all of which companies should be made parties to the suit. Said companies were made defendants.

The Lacey Paving Company, after its demurrers, exceptions, and general denial, specially denied all fraud and coercion, admitted entering into the contract with the city, pleaded that it had done the paving in compliance therewith, and asserted, in substance, as a defense the facts set up by the city and its officers. The North Texas Trust Company adopted the answer of the Lacey Paving Company; and the Brown Crummer Investment Company, in addition to the allegations of the other defendants, alleged that it had purchased, from time to time as issued, paving warrants of the city, had paid value therefor, without notice of any fraud or illegality in the issue thereof, pleaded that it had been furnished with what purported to be certified copies of all the ordinances and resolutions of the city pertaining to the validity of such warrants prior to its purchase thereof, all of which disclosed on their face the regularity and validity of such proceedings.

On a hearing by the court without the intervention of a jury, the court found that the assessment ordinance of June 16, 1930, was not enacted by an affirmative vote of two-thirds of the aldermen of the city of Perryton, and that such ordinance was so irregular and defective as to authorize the city council of the city, in the exercise of their official duties, to reassess abutting

property, dissolved the temporary injunction theretofore granted, and denied the plaintiffs a permanent injunction restraining the city from further reassessment proceedings, from which judgment the plaintiffs prosecute this appeal.

The appellants assign as error the action of the court in refusing to make the temporary injunction permanent, because, having found that the assessing ordinance enacted on June 16, 1930, was not passed by a two-thirds vote of the city council, such ordinance was absolutely void and could not be validated by an attempted reassessment.

The appellants make no contention in this court that the paving ordinances and resolutions passed on May 27, 1930, were not enacted by the unanimous vote of the five aldermen of the city of Perryton and they do not claim that the contract between the city and the Lacey Paving Company, entered into on the same day, was not approved by the entire city council. Their contention is that, as the assessment ordinances of June 16, 1930, were passed by less than two-thirds of the vote of the city aldermen, the city acquired no jurisdiction to pass the ordinances and resolutions of May 27th and enter into the contract of the same day, and therefore the entire proceedings were invalid from their inception and could not be validated by reassessment proceedings.

Article 1095, R. C. S., provides that: "The governing body of any city shall be empowered to correct any mistake or irregularity in any proceedings with reference to such improvement, or the assessment of the cost thereof against abutting property and its owners, and in case of any error or invalidity, to reassess against any abutting property and its owner the cost or part of the cost of improvements, subject to the terms hereof, not in excess of the benefits in enhanced value of such property from such improvement, and to make reasonable rules and regulations for a notice to and hearing of property owners before such reassessment."

Article 1105b, passed at the First Called Session of the 40th Legislature (1927), c. 106, in section 13, provides: "In case any assessment shall for any reason whatsoever be held or determined to be invalid or unenforceable, then the governing body of such city is empowered to supply any deficiency in proceedings with reference thereto and correct any mistake or irregularity in connection therewith, and at any time to make and levy reassessments after notice and hearing as nearly as possible in the manner herein provided for original assessments, and subject to the provisions hereof with reference to special benefits. Recitals in certificates issued in evidence of reassessments shall have the same force as provided for recitals in certificates relating to original assessments."

Section 14 provides: "Anyone owning or claiming any property or interest in any property against which such reassessment is levied shall have the same right of appeal as herein provided in connection with original assessments, and in the event of failure to appeal within fifteen (15) days from the date of such reassessment, the provisions hereinabove made with reference to waiver, bar, estoppel, and defense shall apply to such reassessment."

In Booth et al. v. Uvalde Rock Asphalt Co., 296 S. W. 345, 347, the Court of Civil Appeals of San Antonio, in an opinion by Associate Justice Smith, in which a writ of error was denied by the Supreme Court, holds that the reassessment statutes are constitutional. See also Clark et al. v. Pearson & Co. (Tex. Sup.) 39 S.W.(2d) 27.

The appellants alleged in their petition that on May 27, 1930, the date on which the ordinances and resolutions were enacted and the contract for paving entered into with the Lacey Paving Company, the city fixed the time and place to hear contests of property owners, that notice of such hearing was given by publication in the Ochiltree Herald, and that the meeting to hear such contests was held. The record shows that the meeting for such hearing was held on June 16, 1930, and various property owners appeared at such meeting to contest the assessments. That at least one of the plaintiffs made a vigorous protest against the assessments to be levied against his property. That, between May 27th and June 16th, the agent of the Lacey Paving Company and some of the members of the city council had informed property owners that it was unnecessary to appear on the 16th and contest the assessments to be made against their property, as the paving company did not intend to pave the property abutting on the streets to be improved unless the owner desired such paving and signed a contract therefor. That at the meeting on the 16th the city council gave the property owners the same information, and that but for such representations and advice some of the owners of property abutting on the streets to be improved would have filed contests, and, if the decision of the city council had been unsatisfactory, appeals from such action would have been prosecuted to a court of competent jurisdiction. There is no testimony that any of the representations alleged by the plaintiffs to have been false and fraudulent and upon which they relied, and which prevented them from exercising their right of contest and appeal, were made prior to May 27, 1930, the testimony being uncontroverted that all such representations and conduct occurred after May 27th.

In Crabb et al. v. Uvalde Paving Co., 23 S.W.(2d) 300, 302, the Commission of Appeals said, with the approval of the Supreme Court, that:

"If the property holders involved in this case had not been given proper notice and a hearing accorded them, no jurisdiction would have been acquired by the city of the subject-matter, and its effort to levy an assessment and fix a lien against the property involved would have been futile. It being shown, however, that the property holders were accorded a hearing, after proper notice, the city acquired jurisdiction over the subject-matter; hence the paving certificates ordered to be issued were not void.

"We agree with the conclusion of the Court of Civil Appeals that the situation presented by the proof offered by plaintiffs in error is analogous to one where a court has acquired jurisdiction of the parties to a suit and a judgment is procured against one party through misleading statements made by the other or by the court. Under such circumstances the judgment so rendered is not void, but merely voidable."

██ Under our construction of the facts in the record and these authorities, the city acquired jurisdiction of the subject-matter, and the passage of the assessment ordinance on June 16th, by less than two-thirds vote of the city council, did not defeat such jurisdiction. Neither did the fraud alleged and relied on by appellants defeat the jurisdiction of the city over the subject-matter.

Conceding that the appellants were by the fraud unfairly deprived of their right to contest the assessments and appeal from the decision of the city council, as said in Crabb et al. v. Uvalde Paving Co., supra: "That unfairness does not render the final action of the city council void for lack of power to pass the ordinance and levy the tax complained of. As in the case of unfair judicial proceeding, the aggrieved party may be entitled to relief, when application therefor is made before the rights of third parties become involved."

██ If the plaintiffs were defending a suit in which the holder of the original assessment certificates sought personal judgment and a foreclosure of the assessment lien, their contention that the assessment ordinance was passed by less than a two-thirds vote of the city council would doubtless be a defense, or in such a suit the fraud alleged, if the holder, before the acquisition of the certificates, had notice of the fraud, would doubtless defeat a recovery. However, such questions are not involved in this appeal, as appellants seek to enjoin permanently the city and its aldermen from correcting the irregularity and invalidity of the original certificates and from reassessing against the property and the owners thereof their part of the cost of such paving.

In Booth et al. v. Uvalde Rock Asphalt Co., supra, the court held: "If the original assessment was invalid * * * an injunction might lie against any further effort to enforce that particular assessment; but a court of equity would have no power to restrain appellee from seeking or enforcing any other legal remedy to establish its rights. The law provides such remedy through a reassessment, and the trial court had no power in this action, relating to the original assessment and to removal of cloud by reason thereof, to cut appellee off from that remedy."

██ The appellants urge by an assignment of error that the provisions in the contract between the city and the Lacey Paving Company are void in which it is attempted to obligate the city to pass necessary ordinances and resolutions creating valid assessment certificates, and, in the event of irregularities in the proceedings, to take all the steps allowed by law for curing such irregularities, because such provisions are an attempt to bind the city for the entire cost of the improvements, and no provision was made at the time to assess and collect annually a sum sufficient to pay the interest and create a sinking fund to discharge the entire cost of the improvements.

The appellants allege that on May 27, 1930, the city by a proceeding had on that date, provided for the levy and collection of taxes with which to pay its one-third of the cost of the improvements.

The contract, as alleged by appellees, and the provisions thereof attacked by appellants in their assignments, do not obligate the city to pay the cost of the entire improvement. These provisions of the contract only obligate the city to do what the law has empowered it to do. That is, if the assessments are determined to be invalid or unenforceable, the city is authorized by proper proceedings to correct the mistakes or irregularities in connection therewith by reassessments after notice and hearing. This contention is not tenable. Special assessments are not taxes.

Chief Justice Cureton, speaking for the Supreme Court in City of Wichita Falls v. Williams et al., 119 Tex. 163, 26 S.W.(2d) 910, 914, after a lengthy review of the authorities, says: "We think it settled law that the words 'tax' or 'taxes' used in the Constitution, in the absence of words indicative of a different meaning, are to be interpreted as applying to the usual and ordinary taxes authorized, defined, and more or less regulated by that instrument, and that they do not embrace special assessments provided for by the Legislature under its reserved legislative power and by virtue of its general authority to create or authorize the creation of municipal corporations, which from time immemorial have been given authority to exercise this power."

██ There is no contention that any of the property involved in this litigation was a homestead, and the city, having the power to provide for the improvement of its streets by levying special assessments for two-thirds

of the cost thereof against the owners of abutting property and fixing a lien against such property to secure the payment thereof, was not required to make any provision to levy and collect taxes to pay the interest and create a sinking fund to discharge the cost assessed against such owners and their property. Provision was made for the payment of the city's part.

The appellants contend that the Lacey Paving Company, by threatening to hold the city responsible for the entire cost of the paving, had fraudulently coerced the, city into calling a meeting and issuing notices for hearing for the purpose of reassessing the plaintiffs and their property with two-thirds of the cost of the paving, and that but for such coercion no reassessment would be made.

The city, having entered into a valid contract by proper proceedings to reassess the property and issue reassessment certificates for two-thirds of the cost of the paving, and the law having authorized this procedure, we are at a loss to understand how the city could be coerced into performing its contractual and statutory obligations. The testimony discloses that, in its proceedings for reassessments, the city had consulted its attorney, had employed private attorneys to advise it with reference thereto, and was in good faith acting on the advice of such attorneys. This assignment is without merit.

There is no testimony to the effect that the city will reassess the property or the owners thereof until after a fair hearing is given all owners who desire to contest the action in such reassessment; no testimony that the city would issue reassessment certificates until the outstanding certificates have been delivered and canceled; no testimony that the city will issue warrants to substitute for the warrants already sold and held by one of the defendants, nor does the record disclose that such warrants are invalid.

No contention is made that the reassessment certificates, if issued, will be issued for a greater sum than the original certificates. Therefore, article 3, § 53, of the Constitution, is not involved. The city having made provision for the payment of its part of the cost of the paving and having assessed two-thirds of the cost of the paving against the owners and their abutting property, article 11, § 5, of the Constitution, is not violated.

Under appellants' contention the city has determined that the assessment ordinance of June 16, 1930, assessing the plaintiffs and their property with two-thirds of the cost of the improvements, is so defective as to render it voidable. To correct the defects in such ordinance, the city has called a meeting, fixed a date for the hearing, given notice to the property owners of such hearing and the purpose thereof. The law provides, in effect, that, before such reassessment can be made, notice thereof shall be given to the property owners and a hearing had as provided for the original assessment, and that such reassessment shall not be in excess of the special benefits in enhanced value to the property by such improvements. In our opinion this affords the plaintiffs a complete and adequate remedy at law.

There has been filed under a separate cover, as part of the statement of facts in this case, 126 pages consisting of photostatic copies of warrants, transcript of the city's proceeding relative to the paving involved, and various other instruments purporting to be documentary evidence introduced in the trial of this cause. There has also been filed under another cover what appears to be some 200 unnumbered pages consisting of instruments published in newspapers, certified copies of ordinances, resolutions, contract, and various other instruments purporting to be original documentary evidence introduced in the trial. The attorneys, in writing, have agreed that the instruments so sent up are the original documents introduced in evidence and may be considered as if transcribed into the statement of facts and duly certified as the law directs.

Article 2239, R. C. S., as amended by Acts 1931, 1st Called Sess., c. 34, § 3 (Vernon's Ann. Civ. St. art. 2239) provides, in effect, that original documentary evidence, if identified by the stenographer's report, may, on written direction of the judge, be sent up in the original form, and a failure to substantially comply with the statute in the preparation of a statement of facts shall be sufficient to authorize the appellate court to strike out and not consider such statement.

These original documents filed as a part of the statement are not identified by the stenographer, nor in his transcript of the testimony, and we find no order of the judge directing that such original documents be sent up in the original form. Hence, there is not a substantial compliance with this statute, and we are not considering any of such instruments.

We have considered the testimony contained in the stenographer's question and answer report, approved by the attorneys and certified by the court to be a full, true, and correct statement of the facts. We have also presumed in favor of the judgment that the proof of facts necessary to support such judgment was before the court. We will add, however, that, if these original documents had been considered by us, they would not have affected our disposition of this appeal.

The temporary restraining order heretofore issued by this court is dissolved, and the judgment of the trial court is affirmed.